# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

RICKIE K. SMITH, on behalf of himself
and all others similarly situated,
         Plaintiff,

      v.                            Case No. 19-C-0505

ROCKWELL AUTOMATION, INC., et al.,
         Defendants.

## DECISION AND ORDER

Plaintiff Rickie K. Smith alleges that the Rockwell Automation Pension Plan violates the Employee Retirement Income Security Act of 1974 ("ERISA") because it incorporates outdated actuarial assumptions that cause the value of certain annuities available under the plan to be less than the actuarial equivalent of a single annuity for the life of the participant. When he filed the complaint, Smith alleged that the plan used the outdated assumptions to calculate the value of the annuity he selected. However, according to the defendants, the plan did not use any actuarial assumptions to arrive at the value of Smith's annuity. They now move to dismiss Smith's complaint for lack of subject matter jurisdiction, *see* Fed. R. Civ. P. 12(b)(1), on the ground that he was not injured by the alleged misconduct and therefore lacks standing under Article III of the Constitution to maintain this action.

## I. BACKGROUND

Smith worked at Rockwell Automation and participated in its pension plan, which is subject to ERISA. Under the plan, when a participant retires, he or she receives a pension calculated according to the plan's terms. The amount of the pension generally

depends on the participant's years of service and compensation. Compl. ¶ 32. The complaint alleges that all plan participants "accrue pension benefits in the form of a single life annuity ("SLA"), a payment stream that starts when they retire and ends when they die." *Id.* ¶ 2. The complaint further alleges that participants can elect to receive their pension benefits in other forms, including in the form of "a 10-year certain-and-life annuity ("10YCLA"), which provide[s] a participant (and a beneficiary) benefits for the life of the participant but at least for a minimum of 10 years, regardless of how long the participant lives." *Id.* Smith elected to receive his benefits in the form of a 10YCLA.

The complaint alleges that, to calculate the amount of the 10YCLA, the defendants "apply actuarial assumptions to calculate the present value of the future payments." *Id.* ¶ 3. According to the complaint, "[t]hese assumptions are based on a set of mortality tables to predict how long the participant and beneficiary will live and interest rates to discount the expected payments." *Id.* The complaint alleges that "[t]he mortality table and interest rate together are used to calculate a 'conversion factor' which determines the amount of the benefit that would be equivalent to the SLA the participant accrued." *Id.* The basic grievance alleged in the complaint is that the plan uses antiquated mortality assumptions when it converts the value of the participant's single life annuity into other forms, including the 10YCLA, which causes the value of the other forms to be less than the actuarial equivalent of the single life annuity. The complaint alleges that ERISA prohibited the plan from offering the plaintiff a 10YCLA that was less than the actuarial equivalent of the single life annuity he accrued, and that he is entitled to have his annuity payments recalculated using reasonable actuarial assumptions. The complaint alleges that, when the plaintiff's payments are recalculated

2

using reasonable actuarial assumptions, his annuity payments will increase by $54.42 each month. *Id.* ¶ 64.

The defendants now contend that the complaint's factual allegations about how Smith's annuity payments were calculated are untrue. They submit a declaration from the administrator who calculated his benefits stating that such benefits were calculated without applying a mortality table or other actuarial assumptions. *See* Declaration of Jason Gopaul ¶¶ 14–20. The defendants contend that, because the plan did not use actuarial assumptions to calculate the plaintiff's annuity, he could not have been injured by the plan's failure to update its mortality assumptions. They move to dismiss his claim for lack of Article III standing to sue.

In response, the plaintiff concedes that discovery has revealed that the facts alleged in the complaint about how his benefits were calculated are untrue. *See* Resp. to Mot. to Dismiss at 4. He concedes that the plan did not start with a single life annuity and then apply actuarial assumptions to convert the single life annuity into his 10YCLA. However, he contends that this does not mean that the defendants did not use actuarial assumptions in a way that injured him. Smith contends that, because the plan used antiquated mortality tables, the 10YCLA and the single life annuity that the plan offered him were not actuarially equivalent to each other. He contends that, although the plan did not use mortality assumptions to convert the single life annuity into the 10YCLA, it *did* use mortality assumptions to convert the 10YCLA into the single life annuity that he "could have taken." *Id.* The plaintiff contends that he was injured by being offered a choice between two payment forms that were not actuarially equivalent to each other.

3

## II. DISCUSSION

Article III standing is an element of a federal court's subject-matter jurisdiction. *See, e.g., Collier v. SP Plus Corp.*, 889 F.3d 894, 896 (7th Cir. 2018). To establish such standing, a plaintiff must demonstrate (1) that he or she suffered an injury in fact that is concrete, particularized, and actual or imminent, (2) that the injury was caused by the defendant, and (3) that the injury would likely be redressed by the requested judicial relief. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992).

There is no dispute that, under the facts alleged in the complaint, the plaintiff has standing. The complaint alleges that, in violation of ERISA, the plan used outdated mortality assumptions to calculate his pension benefits, which caused those benefits to be less than they would have been had the plan used current mortality assumptions. The complaint alleges that, had the plan used current mortality assumptions, the plaintiff would be receiving an additional $54.42 each month. These allegations plead that the plaintiff suffered an actual, concrete, and particularized injury (the loss of $54.42 each month), that was caused by the plan and that would likely be redressed by the requested judicial relief.

The defendants contend that one of the complaint's key allegations—that the plan used actuarial assumptions to convert the value of a single life annuity into a 10YCLA—is false, and that therefore the plaintiff was not injured by the plan's use of the mortality assumptions he challenges and does not have standing. During the initial stages of a case, standing is ordinarily determined by the complaint's allegations rather than by the evidence. *See Lujan*, 504 U.S. at 561. But the defendants claim to be mounting a "factual attack" on the plaintiff's standing, which is different than a "facial

4

challenge." *See Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443 (7th Cir. 2009). "Facial challenges require only that the court look to the complaint and see if the plaintiff has sufficiently *alleged* a basis of subject matter jurisdiction." *Id.* (emphasis in original). In contrast, "a factual challenge lies where the complaint is formally sufficient but the contention is that there is *in fact* no subject matter jurisdiction." *Id.* at 444 (emphasis in original, internal quotation marks omitted). When considering a motion that launches a factual attack against jurisdiction, "[t]he district court may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Id.* (internal quotation marks omitted).

Although the defendants purport to launch a factual attack on the plaintiff's standing, the target of their campaign is an allegation relating to the merits of the plaintiff's claim rather than his standing to bring it. The defendants argue that, in light of their evidence that the plan did not convert the plaintiff's pension from a single life annuity into a 10YCLA, the plaintiff will be unable to prove his allegation that his benefits were calculated using antiquated actuarial assumptions. Thus, the defendants claim, the plaintiff will be unable to prove that the plan's actuarial assumptions caused him an injury in fact. However, as just discussed, the plaintiff *alleged* that the defendants converted his benefits into a 10YCLA using the challenged assumptions and therefore was injured by the assumptions. "[F]ailure to *prove* injury, like failure to establish one's legal position, does not retroactively deprive the litigant of standing." *Senegal v. JPMorgan Chase Bank, N.A.*, 939 F.3d 878, 881 (7th Cir. 2019) (emphasis added). Instead, failure to prove injury leads to judgment on the merits for the defendants. *See*

5

*Am. Civil Liberties Union of Il. v. City of St. Charles*, 794 F.2d 265, 269 (7th Cir. 1986) (noting that if plaintiff pleads but fails to prove injury in fact the claim should be dismissed on the merits rather than for lack of jurisdiction). Thus, if the defendants' evidence shows that the plaintiff was mistaken in thinking that the mortality assumptions he challenges were used to calculate his pension, then the defendants would be entitled to judgment on the merits of the claims alleged in the complaint.

The plaintiff, however, contends that he can still prove that the plan used the outdated mortality assumptions in a way that injured him. He contends that, although the plan did not use those assumptions to calculate the 10YCLA he selected, it did use them to convert the 10YCLA into the single life annuity that he was offered. The plaintiff points out that, if the outdated assumptions were used to convert the 10YCLA into the single life annuity, then at the time of his retirement he was offered payment options that were not actuarially equivalent to each other. *See* Decl. of Mitchell I. Serota, ECF No. 35-4. As a result, he contends, his 10YCLA is paying benefits that are less than the actuarial equivalent of the single life annuity "he could have taken." Br. in Opp. at 4.

The defendants contend that the plaintiff may not pursue this revised legal theory without amending his complaint. Generally, federal notice-pleading rules do not require that the complaint contain the pleader's legal theory, and thus a litigant may change or add legal theories without amending the pleadings. *See R3 Composites Corp. v. G&S Sales Corp.*, 960 F.3d 935, 941 (7th Cir. 2020); *BRC Rubber & Plastics, Inc. v. Cont'l Carbon Co.*, 900 F.3d 529, 540–41 (7th Cir. 2018) *Hatmaker v. Mem'l Med. Ctr.*, 619 F.3d 741, 742 (7th Cir. 2010). However, if a new legal theory alters the factual basis of

the pleader's claim, then an amendment to the complaint is required. *See Chessie Logistics Co. v. Krinos Holdings, Inc.*, 867 F.3d 852, 859–60 (7th Cir. 2017).

Here, the plaintiff's revised legal theory changes the factual basis of his claim. In the complaint, the plaintiff alleged that he accrued his pension benefits "in the form of a single life annuity," Compl. ¶¶ 2, 32, which the defendants then converted into a 10YCLA using outdated actuarial assumptions, *id.* ¶ 3. The plaintiff now concedes that these allegations are untrue. The plaintiff's new legal theory relies on the factual allegations that he accrued his pension benefits in the form of a 10YCLA and that the defendants gave him the option to convert that benefit into a single life annuity, which they calculated using outdated actuarial assumptions. Thus, although the plaintiff's allegations about the plan's mortality assumptions remain the same, his factual allegations concerning how those assumptions were applied to his circumstances have changed. To proceed with this theory, then, the plaintiff must amend his complaint.

The defendants contend that I should not grant the plaintiff leave to amend because the amendment would be futile. *See Foman v. Davis*, 371 U.S. 178, 182 (1962). They present two futility arguments. First, they contend that the plaintiff lacks standing even under his new theory because he could not have been harmed by the use of outdated mortality assumptions to calculate the value of the single life annuity he was offered but did not select. Second, they contend that the revised legal theory is incorrect as a matter of ERISA law. The defendants raised both arguments in their reply brief, and therefore the plaintiff has not had a chance to respond to them. But based on the reply brief, the arguments seem to have merit. For these reasons, I will explain why I think the defendants' arguments are correct and then grant the plaintiff the option to file

7

a motion to amend his complaint in which he explains why the amendment would not be futile.

First, I do not see how the plaintiff could have been injured by the plan's use of outdated mortality assumptions to calculate the value of the single life annuity he was offered but did not select. I understand that the plaintiff believes the plan's using those assumptions resulted in the single life annuity not being actuarially equivalent to the 10YCLA. But the plaintiff did not select the single life annuity; he selected the 10YCLA, which was not calculated using the plan's mortality assumptions. I do not see how merely *offering* the plaintiff a single life annuity that was calculated using outdated actuarial assumptions could have harmed him.

Moreover, had the plan used the plaintiff's updated mortality assumptions, the value of the single life annuity he was offered would have been lower, not higher. The monthly payments under the single life annuity the plaintiff was offered would have been $1,616.25 per month. Serota Decl. ¶ 8. According to the declaration submitted by the plaintiff's actuarial expert, if the plan would have used reasonable mortality assumptions, it would have converted the 10YCLA into a single life annuity by dividing the monthly payments under the 10YCLA by 0.98304. *Id.* ¶¶ 9–10 (explaining that value of single life annuity can be derived from value of 10YCLA by dividing value of 10YCLA by a numerical factor calculated using a given set of actuarial assumptions); ¶ 12 (stating that, under reasonable actuarial assumptions, applicable factor is 0.98304). The monthly payment under the plaintiff's 10YCLA is $1,534.32. *See* Compl. ¶ 64. Dividing this amount by 0.98304 yields a single life annuity that pays $1,560.79 per month, which is $55.46 per month *less* than what the plaintiff could have taken under the single life

8

annuity that the defendants offered him. I do not see how the plaintiff could have been harmed by the defendants' offering him a single life annuity that was higher in value than it would have been had the plan used reasonable actuarial assumptions. Under the plaintiff's own legal theory, he would have obtained a windfall had he selected the single life annuity the defendants offered him. The plaintiff does not have standing to bring an action that could do no more than establish that he should never have had the opportunity to obtain the windfall.

As for the merits of the plaintiff's revised legal theory, the defendants correctly point out that the plaintiff's claim that ERISA required the 10YCLA and the single life annuity to be actuarially equivalent does not square with the provisions of ERISA he cites. The plaintiff begins at Section 205(a)(1) of ERISA, which provides that a pension plan must provide that "in the case of a vested participant who does not die before the annuity starting date, the accrued benefit payable to such participant shall be provided in the form of a qualified joint and survivor annuity." 29 U.S.C. § 1055(a)(1). He then points out that, for unmarried participants, the qualified joint and survivor annuity is "an annuity for the life of the participant." *See* 26 C.F.R. § 1.401(a)-20, Q&A 25. Next, he contends that a certain-and-life annuity, such as the 10YCLA he receives, is "an annuity for the life of the participant." Br. in Opp. at 2. This contention is questionable, in that an annuity that guarantees payments for a minimum term even if the participant dies before the term expires is more than "an annuity for the life of the participant." But even if the contention were correct, the plaintiff's argument would seem to crumble at the next step, which relies on ERISA Section 205(d)(1). That section provides that the qualified joint and survivor annuity must be "the actuarial equivalent of a single annuity for the life of

9

the participant." 29 U.S.C. § 1055(d)(1). If, as the plaintiff contends, a certain-and-life annuity is both (1) an unmarried participant's qualified joint and survivor annuity and (2) an annuity for the life of the participant, then any certain-and-life annuity offered to an unmarried participant would automatically satisfy ERISA Section 205(d)(1)—for an annuity cannot fail to be actuarially equivalent to itself. Further, the governing regulations specifically state that "in the case of an unmarried participant, the QJSA may be less valuable than other optional forms of benefit payable under the plan." 26 C.F.R. § 1.401(a)-20, Q&A16. So even if plaintiff's 10YCLA is a qualified joint and survivor annuity, and even if the 10YCLA was less than the actuarial equivalent of the single life annuity the defendants offered him, the defendants could not have violated ERISA. Thus, the plaintiff's argument that the plan violated ERISA Section 205(d)(1) when it calculated the value of the single life annuity it offered him seems to fail on the merits.

For these reasons, I think the arguments contained on pages 8–11 of the defendants' reply brief are correct. They show that the plaintiff could not have been injured by the plan's use of outdated actuarial assumptions to convert his 10YCLA into a single life annuity that he did not select and that would have been smaller had the plan used the plaintiff's preferred mortality assumptions. Further, even if the plaintiff was injured, he has not shown that the injury was caused by a violation of ERISA. Accordingly, if the plaintiff wishes to proceed with this case, he must file a motion to amend his complaint in which he explains how he was injured by the alleged conduct and how such conduct could have violated ERISA.

### III. CONCLUSION

Under the allegations of the existing complaint, the plaintiff was injured by the defendants' conduct. Therefore, the plaintiff has standing to pursue the claims alleged in that complaint. But because a key fact on which the claims were based is untrue, the defendants are entitled to judgment on the merits with respect to those claims. However, the plaintiff may file a motion for leave to amend his complaint under Civil Local Rule 15. In his brief in support of the motion, the plaintiff must show that he has standing to pursue his revised legal theory and that the theory could survive a motion to dismiss for failure to state a claim. The defendants may respond to the motion within the time set by the local rules, and then the plaintiff may file a reply. If the plaintiff does not file a motion for leave to amend his complaint, I will assume that he does not oppose the entry of judgment for the defendants on the merits of the claims alleged in the existing complaint.

For the reasons stated, **IT IS ORDERED** that the defendants' motion to dismiss the complaint for lack of subject-matter jurisdiction (ECF No. 31) is **DENIED**.

**IT IS FURTHER ORDERED** that the plaintiff shall have until **January 19, 2021** to file a motion for leave to amend his complaint. If no such motion is filed by that date, the court will enter judgment on the merits of the claims alleged in the existing complaint.

Dated at Milwaukee, Wisconsin, this 29th day of December, 2020.


s/Lynn Adelman_____
LYNN ADELMAN
United States District Judge

11